## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BLUE CEDAR ENERGY, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. CIV-24-730-HE** |
| | § | |
| **MEWBOURNE OIL COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF BLUE CEDAR ENERGY, LLC'S TRIAL BRIEF

Plaintiff, Blue Cedar Energy, LLC ("Blue Cedar") submits the following Trial Brief for the Court's consideration.

### I.        INTRODUCTION

This case concerns a sudden and permanent loss of production from two producing vertical wells owned by Blue Cedar after Defendant Mewbourne Oil Company ("Mewbourne") hydraulically fractured a nearby horizontal well in the same geologic formation. Blue Cedar's evidence will show that the Mannering 1-2 and Mannering 2-2 wells were producing before Mewbourne completed the Edna 33/4 AP 1H well ("Edna 1H"), that both Mannering wells suffered an abrupt and contemporaneous production failure during the Edna 1H frac window, that fluid was later recovered from the Mannering wells under conditions consistent with frac communication, and that repeated efforts to restore production failed.

Plaintiff asserts claims for private nuisance and negligence against Mewbourne, seeking to recover $957,850, which represents the difference in the fair market value of the

1

Mannering Wells immediately before and after the Edna 1H frac impact on the wells. Blue Cedar also seeks to recover approximately $156,511.11 in damages for amounts expended in attempting to restore production on the Mannering Wells.

## II.     SUMMARY OF THE EVIDENCE.

Blue Cedar operates the Mannering 1-2 and Mannering 2-2 wells, vertical wells completed in the Cherokee formation. Blue Cedar acquired the Mannering Wells in March 2023, the same month that Mewbourne was conducting its hydraulic fracturing operation on the Edna 1H well. These wells had been producing hydrocarbons prior to the events at issue. Defendant operates the Edna 1H well, a horizontal well completed in the same formation. Defendant conducted multi-stage hydraulic fracturing operations on the Edna 1H well in late March through early April 2023, including during the period from March 21 to April 2, 2023. The evidence will show that the Mannering wells and the Edna 1H well produce from the same geologic formation, and Blue Cedar's expert will testify that this formation allows for pressure communication between wells.

Blue Cedar will present testimony and production data establishing that the Mannering wells experienced a sudden and contemporaneous loss of production during Defendant's fracturing operations of the Edna 1H well. In addition, witnesses with firsthand knowledge will testify that production from the Mannering wells ceased in late March or early April 2023, during the final stages of Defendant's fracturing operations of the Edna 1H well. As of April 2, 2023, the Mannering wells had no pressure to flow. The evidence will show that the sudden drop of production coincided with the dates of the Edna

2

1H fracturing stages that most likely affected those wells. Plaintiff's expert will testify that the fracturing operations directly and adversely affected both Mannering wells and caused decreased production volumes and recoverable reserves.

At trial, Blue Cedar will present both expert testimony and fact testimony, along with objective data, establishing that this production collapse was not coincidental, but instead the direct result of subsurface interference caused by Defendant's hydraulic fracturing operations in a continuous, homogeneous formation. Further, the evidence will prove that the Mannering Wells did not return to their prior production levels following Defendant's fracturing operations. Blue Cedar undertook efforts to restore production, including swabbing and other remedial measures, but the wells remained impaired.

Finally, there was no independent, intervening cause that explains the sudden and simultaneous loss of production in both Mannering wells during Defendant's fracturing operations. Prior to the frac, the wells were producing. There is no evidence of a mechanical failure, equipment malfunction, or other intervening event that would account for the abrupt production collapse. The simultaneous loss of production on both wells (in addition to two other wells in the area that lost production within a matter of days), combined with the timing and pressure data, is not consistent with ordinary depletion or routine operational issues.

Contrary to Defendant's contentions, Blue Cedar's claims do not require direct, physical proof that frac fluid or frac sand physically migrated from the Edna 1H well to the Mannering wells.[1] Oklahoma law does not require such proof. The evidence will show that

---

[1] Mewbourne did not run tracers on the frac fluid in the Edna 1H Well.

Defendant's operations caused a substantial interference with Blue Cedar's ability to produce its wells, resulting in significant and permanent economic harm.

## III.   NATURE OF THE ACTION AND ISSUES FOR TRIAL

This is an action between neighboring oil and gas operators concerning alleged interference with producing wells in the Cherokee (Red Fork) formation in Custer County, Oklahoma. Blue Cedar operates two older vertical wells, the Mannering #1 and Mannering #2, and Defendant operates the nearby Edna 1H horizontal well, all of which are completed in and producing from the Red Fork formation.

Blue Cedar asserts claims for private nuisance and negligence arising out of Mewbourne's completion of the Edna 1H well. The principal legal issues discussed in this brief are: (1) Whether Oklahoma's modified private nuisance doctrine governs Blue Cedar's nuisance claim, such that Blue Cedar need not prove negligence or wrongdoing as an element of nuisance liability; (2) Whether Blue Cedar has standing to pursue these claims; and (3) The nature and amount of Blue Cedar's damages. (Blue Cedar is not pursuing punitive damages at trial).

### 1. THE MODIFIED PRIVATE NUISANCE DOCTRINE GOVERNS BLUE CEDAR'S PRIVATE NUISANCE CLAIM

The principal legal dispute at trial concerns the private nuisance standard. Blue Cedar submits that Oklahoma's subsurface-encroachment cases supply controlling rules. In such a case, Blue Cedar need not prove that Defendant was negligent, unreasonable, or unlawful. Defendant has taken the position that regulatory compliance eliminates any liability related to the Edna 1H frac.

In cases involving the underground encroachment of water or oil into a plaintiff's property, Oklahoma courts routinely apply a "modified private nuisance doctrine." *Greyhound Leasing & Fin. Corp. v. Joiner City Unit*, 444 F.2d 439, 441 (10th Cir. 1971). Under that doctrine, Blue Cedar need not prove carelessness, negligence, or unreasonableness as an element of liability. The question is whether Mewbourne's operations caused a real and substantial injury to Blue Cedar's property interest. *British-American Oil Producing Co. v. McClain*, 1942 OK 89, ¶ 15, 126 P.2d 530, 532; *Gulf Oil Corp. v. Hughes*, 1962 OK 39, ¶ 10, 371 P.2d 81, 83; *Greyhound Leasing & Fin. Corp. v. Joiner City Unit*, 444 F.2d 439, 441-42 (10th Cir. 1971).

In *Gulf Oil Corp. v. Hughes*, the landowner plaintiff sued the defendant oil company for damage to the owner's wells when the oil company pumped large amounts of water at high pressure into a neighboring well. *Gulf Oil Corp* at ¶1, 371 P.2d at 82. At trial, the jury found in favor of plaintiff and awarded damages. *Id.* at ¶4. On appeal, the defendant oil company argued that "[l]iability for underground pollution of a water well from oil and gas operations <u>must be based on negligence</u> or nuisance and the submission of the case to the jury on the theory of absolute liability was error. . . ." *Id.,* at ¶ 5 (internal quotations omitted). The Supreme Court rejected defendant's argument and approved the following jury instruction:

> [I]f you should find that the [oil company] conducted water flooding operations for the recovery of oil in the vicinity of the land[owners], and if you should further find that such water flooding operations caused the water supply of the [landowners] to become unfit for drinking or other household uses, and that such water flooding operations were the direct, natural and proximate cause of the damage and injury to the water supply of the

[landowners], then you are instructed that the [landowners] should recover damages from the [oil company].

*Gulf Oil Corp.* at ¶ 20, 371 P.2d at 84. This has long been the law in Oklahoma.

In *Fairfax Oil Co. v. Bolinger*, the Oklahoma Supreme Court explained that even if a use is legal, if another's property is substantially damaged as a result, the injured owner may recover as for nuisance in fact, and a lawful use may become a nuisance per *accidens* if it substantially damages another's property. *Fairfax Oil Co. v. Bolinger*, 1939 OK 350, ¶ 6, 97 P.2d 574, 576.

And in *British-American Oil Producing Co. v. McClain*, the Supreme Court again made the point, but even more directly: "In a [private nuisance case] **the use need not be of a careless or negligent nature, or unreasonable or unwarrantable, to entitle the injured party to recover.** If the use causes a substantial injury to the property of another, he may recover as for a private nuisance." *British-American Oil Producing Co. v. McClain*, 1942 OK 89, ¶ 15, 126 P.2d 530, 532 (emphasis added):

Likewise, the 10th Circuit's opinion *Greyhound Leasing & Financial Corp. v. Joiner City Unit*, 444 *F.2d 439 (10th Cir. 1971*) is equally on point.[2] There, the plaintiff was a working interest owner in two (2) oil and gas wells who claimed that the saltwater from an adjacent secondary recovery unit intruded upon its leases and wells. *Id.* at 440. Similar to Blue Cedar's Mannering Wells, the plaintiff's well was located outside the unit

---

[2] The Tenth Circuit reviewed the Oklahoma decisions involving encroachments into subsurface strata, and explained that it applies a "modified private nuisance doctrine," essentially the common-law doctrine as altered by the Oklahoma Constitution to remove the common-law elements of carelessness or unreasonableness. *Greyhound Leasing & Financial Corp. v. Joiner City Unit*, 444 F.2d at 441-42.

boundary, and the saltwater traveled "about a mile" from the injection point to the plaintiff's lease. *Id.* At trial, the court instructed the jury that "the Unit was constituted lawfully,…that it was empowered to conduct the secondary recovery operation which was its purpose,…and that the evidence showed no negligence on its part in carrying out the operations." *Id.* at 441. Then, using an instruction nearly identical to the nuisance instruction in *Gulf Oil Corp.*, the court instructed the jury that "**these facts did not prevent the defendant from being liable for damage caused to the plaintiff's leases by reason of the intrusion of the salt water**." *Id.* (emphasis added). The jury found for the plaintiff, awarding damages. *Id.* at 440. On appeal, the defendant raised a similar point of error to that raised by the defendant in *Gulf Oil Corp.*—*i.e.*, that the trial court's jury instructions erroneously failed to include an element of wrongdoing on the part of the defendant. *Id.* at 440-41. The court rejected this argument, explaining that *Gulf Oil Corp.*, as the "decisional law prevailing in Oklahoma" on the issue, removed the common law elements of carelessness or unreasonableness from the plaintiff's nuisance claim. *Id.* at 442.

Here, as in *Gulf Oil Corp.* and *Greyhound Leasing*, Mewbourne's frac of the Edna 1H Well caused water to encroach onto Blue Cedar's lease and into the wellbores of the Mannering Wells, damaging production therefrom. These facts trigger the application of the Oklahoma Supreme Court's "modified private nuisance doctrine" and make it so that Mewbourne's unreasonable and improper actions—although extensive—have no bearing on Blue Cedar's nuisance claim. Thus, Mewbourne is not cloaked with immunity just because it claims to have applied for, received, and complied with the relevant regulatory requirements for drilling and completing a horizontal well.

Later, the Oklahoma Court of Civil Appeals was faced with a similar situation. In *Boyce v. Dundee Healdton Sand Unit*, the court approved a jury instruction informing the jury that <u>even though operations were lawful and carried on without negligence,</u> adjacent owners could recover if the operations resulted in an unreasonable interference with the peaceful occupation and enjoyment of their property. *Boyce v. Dundee Healdton Sand Unit*, 1975 OK CIV APP 23, ¶ 10, 560 P.2d 234, 236. *Boyce* and *Greyhound Leasing* confirm that lawful oilfield operations do not enjoy blanket immunity merely because they were lawfully undertaken.

In addition to the cases above, secondary sources are in agreement. In a Harvard Environmental Law Review article titled *A Unifying Doctrine of Subsurface Property Rights*, Professor Joseph A. Schremmer[3] observed that:

> Oklahoma courts interpret a provision of that state's constitution, which "removes the common law elements of carelessness or unreasonableness" from the doctrine of private nuisance, **as imposing strict liability for subsurface injuries.** In Oklahoma, a defendant may be liable for injury to a plaintiff's subsurface property as long as it was legally caused by an act of the defendant, apparently <u>regardless of whether the act was volitional or its consequences reasonably foreseeable</u>.

*A Unifying Doctrine of Subsurface Property Rights*, 46 Harv. Envtl. L. Rev. 525, 565 (quoting and citing *Greyhound Leasing & Fin. Corp. v. Joiner City Unit*, 444 F.2d 439, 441-42 (10th Cir. 1971) and *Fairfax Oil Co. v. Bolinger*, 1939 OK 350, 97 P.2d 574, 575-76) (emphasis added); *accord 1 Energy Law and Transactions* § 13.01 (2026), n. 120.

---

[3] Mr. Schremmer is the Eugene Kuntz Chair of Law in Oil, Gas, & Natural Resources. https://law.ou.edu/faculty-and-staff/joseph-schremmer.

Contrary to the established Oklahoma law applicable to subsurface property encroachment, Mewbourne has relied on generalized nuisance language from cases such as *Laubenstein v. Bode Tower, L.L.C.*, 2016 OK 118, 392 P.3d 706, and on public-nuisance authorities such as *State ex rel. Hunter v. Johnson & Johnson*, 2021 OK 54, 499 P.3d 719. **Those authorities do not control here.**

First, *Johnson & Johnson* concerned public nuisance and the sale of lawful products into the stream of commerce, not direct physical injury to a neighboring property interest through subsurface encroachment. *Johnson & Johnson*, at ¶ 19, 499 P.3d at 725. Likewise, Mewbourne's citations to other cases reciting generalized formulations that nuisance arises from "unreasonable, unwarranted, or unlawful" use of property do <u>not</u> speak to the specific Oklahoma line of cases addressing underground invasion of another's subsurface estate or wellbore.

In this case, Oklahoma's Supreme Court has spoken specifically to a defined recurring factual setting—subsurface encroachment resulting in real and substantial injury—that specific line of authority controls over broad generalizations from other nuisance contexts. Taken together, those decisions establish the rule Blue Cedar asks the Court to apply here: in a subsurface-encroachment case involving direct injury to another operator's producing property interest, Blue Cedar need not prove Mewbourne acted negligently, carelessly, unreasonably, or unlawfully. Rather, Blue Cedar must prove ownership, causation and damages.

**2. IF THE COURT APPLIES ORDINARY NUISANCE CONCEPTS, BLUE CEDAR STILL SATISFIES THEM.**

Even if the Court were to conclude that some form of "unreasonable interference" must be shown, Blue Cedar can satisfy that burden. Oklahoma cases make clear that "plaintiff **need not** show that the defendant's actions were unreasonable; rather, it need only be shown that the resulting burden on the plaintiff is unreasonable." *C. Corff P'ship, Ltd. v. Oxy USA, Inc.*, 1996 OK CIV APP 92, ¶ 21, 929 P.2d 288, 294. Stated another way, the "unreasonableness" element focuses on the unreasonable burden to *Blue Cedar's property*—not on the unreasonableness of *Defendant's actions*. *Id.* In this case, the evidence will show that Mewbourne's hydraulic fracturing operation imposed an extraordinary and unreasonable burden on Blue Cedar's property rights by knocking the Mannering Wells offline during the frac window and leaving them permanently impaired after repeated remediation efforts failed.

**3. BLUE CEDAR HAS STANDING TO BRING ITS CLAIMS**

Mewbourne argues that, because Blue Cedar did not fully close the sale of the Mannering Wells until March 31, 2023, it cannot recover damages. However, this is incorrect both factually and legally.[4]

First, the Effective Date of the conveyance of the Mannering Wells to Plaintiff was February 1, 2023. (See Defendant's Exhibit 17, Dkt. 46-17). Second, the OCC Form 1073 transferring the Mannering Wells to Plaintiff was submitted to the OCC on March 10, 2023.

---

[4] This issue was briefed by Plaintiff in its Response to Defendant's Motion for Summary Judgment (Dkt. 55, at p. 6). Thus, Plaintiff will not restate all of its arguments here.

(See Dkt. 55-1). Thus, even though the Assignment was not yet filed of record, Blue Cedar obtained equitable title as of February 1, 2023, the effective date of the conveyance.

Even if the effective date of the assignment does not govern—which it does—Plaintiff can nevertheless recover for the damages it seeks. Under Oklahoma law, "to the extent damages caused by a nuisance are temporary in nature—*i.e.*, damages reasonably capable of abatement—they will be held **not permanent** and the statute will not begin to run until injury is suffered." *N.C. Corff P'ship, Ltd. v. Oxy USA, Inc.*, 1996 OK CIV APP 92, ¶ 15, 929 P.2d 288, 293. Stated differently, the cause of action does not accrue until a temporary injury becomes permanent. According to Defendant, any damages that Plaintiff suffered are temporary, and capable of abatement. (*See* Generally Dkt. 55, at pp. 6-13). Thus, Plaintiff has standing to pursue the claims it asserts.

### 4. DAMAGES.

The proper measure of damages in a case of this nature is the diminution of the fair market value of the Mannering Wells before and after the Edna 1H frac impact. *Houck v. Hold Oil Corp.*, 867 P.2d 451, 461 (Okla. 1993) ("The measure of damages for permanent injuries to land is the difference between the reasonable market value of the land immediately before the injuries and the reasonable market value of the land immediately after the injuries."). In addition, Plaintiff will also seek damages in for amounts expended in attempting to restore production on the Mannering Wells. *See* 23 O.S. §61 (For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.")

11

Blue Cedar will present expert testimony on the fair market value of the Mannering Wells prior to the Edna 1H frac. This analysis is based on production data, decline analysis, and standard industry methodologies.

Respectfully submitted,

*/s/Brady L. Smith*
Brady L. Smith, OBA #30727
Harry "Skeeter" Jordan, OBA #32437
**BRADY SMITH LAW, PLLC**
One Leadership Square, Suite 1320
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone: 405.293.3029
Brady@BLSmithLaw.com
Skeeter@BLSmithLaw.com

**ATTORNEYS FOR PLAINTIFF**
**BLUE CEDAR ENERGY, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on April 15, 2026, a true and correct copy of the above and foregoing was filed with the court via CM/ECF and served on all parties requesting electronic notification.

Timothy J. Bomhoff
Laura J. Long
Robert C. Vartabedian
**MCAFEE & TAFT, A PROFESSIONAL CORPORATION**
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102

-and-

Robert C. Vartabedian
Weldon P. Sloan
**VARTABEDIAN HESTER & HAYNES**
301 Commerce St., Ste. 2200
Fort Worth, TX 76102

**ATTORNEYS FOR DEFENDANT MEWBOURNE OIL COMPANY**

*/s/ Brady L. Smith*