| | | |
|---|---|---|
| **BLUE CEDAR ENERGY, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Case No. CIV-24-730-HE** |
| **V.** | § | |
| | § | *Removed from Case # CJ-24-65* |
| **MEWBOURNE OIL COMPANY,** | § | *District Court of Custer County* |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEWBOURNE OIL COMPANY'S RESPONSE TO BLUE CEDAR ENERGY, LLC'S TRIAL BRIEF

Mewbourne Oil Company submits the following Response to Blue Cedar's Trial Brief for the Court's consideration.

## INTRODUCTION

As Blue Cedar tells it, this case is about whether Blue Cedar can hold Mewbourne liable for conduct that was lawful, within industry custom, and reasonable. In other words, can a party be liable for nuisance in Oklahoma when no one has even alleged—much less proven—that it did a single thing wrong? If the answer is yes, Blue Cedar says it may be able to make a case against Mewbourne based on Mewbourne's ordinary, routine oil and gas operations. If the answer is no? Blue Cedar's silence on that subject reveals the inevitable—Blue Cedar has no evidence indicating that Mewbourne took any unreasonable, unwarranted, or unlawful action in completing the Edna 1H Well.

Of course, this Court should not accept Blue Cedar's outdated statement of the law in Oklahoma regarding liability without fault. Nuisance—even among oil and gas operators—is not a strict liability tort. All modern, authoritative precedents agree that recovery for nuisance requires a showing that the defendant engaged in some act that was at least unreasonable, unwarranted, or unlawful.

But even if Blue Cedar's assertions on strict liability are credited, Blue Cedar still cannot prevail in this case. Blue Cedar's Trial Brief omits any substantive discussion of negligence, and it fails to deal with major legal deficiencies with its causation and nuisance theories. Additionally, Blue Cedar does not even own the claims it asserts—it makes no attempt to argue that injury occurred after its acquisition of the Mannering Wells closed. Even Blue Cedar's damages theory is fatally flawed, as it seeks to recover more than the longstanding damages limit for permanent injury to property—the difference between value before the alleged injury and value after the alleged injury. Accordingly, Blue Cedar's claims are legally and factually deficient, and it should recover nothing for them.

### RESPONSE TO BLUE CEDAR'S SUMMARY OF THE EVIDENCE

It is just as important to recognize what is lacking from Blue Cedar's summary of the evidence as it is to examine what is contained within. Namely, nowhere in Blue Cedar's summary of the evidence does Blue Cedar reference any evidence that Mewbourne took some unreasonable, unusual, wrong, or unlawful action in hydraulically fracturing ("fracing") the Edna 1H Well. Blue Cedar describes no evidence indicating some problem

with the actions Mewbourne took, and no evidence that Mewbourne failed to do something that it should have done in completing the frac.

Moreover, Blue Cedar's summary of the evidence underscores that the entirety of its theory of proof is based on the following formulation: Mewbourne fraced the Edna 1H, the Mannering Wells experienced a production decline at the same time, and so the Edna 1H frac must have caused the production decline. Indeed, Blue Cedar admits that "[t]here is no evidence of a mechanical failure [or] equipment malfunction" with the Mannering Wells—and it has no other explanation for why the Mannering Wells have experienced a production decline other than to invoke timing and unspecified "pressure data."[1]

But that same timing also coincides with another major event unrelated to Mewbourne's frac—Blue Cedar's assumption of operations and subsequent failure to adequately install an artificial lift mechanism for the Mannering Wells. Nor do Blue Cedar's vague references to "pressure data" supply a causal link. The evidence will show that pressure data reflects normal behavior for the Mannering Wells throughout the frac, and other objective metrics—such as water production—likewise indicate the Mannering Wells behaved normally during the frac. On this record, the operator change and accompanying operational decisions are a far more likely explanation for any later issues with the Mannering Wells than the infinitesimal possibility that the Edna 1H frac connected to the Mannering Wells—***between 1.25 and 1.5 miles away***—via a "w[o]rm hole."[2]

---

[1] Pl.'s Tr. Br., Dkt. # 77, at 3.
[2] Def.'s Mot. Limine Ex. 1, Dkt. # 63-1, at 114:12–116:13.

**RESPONSE TO BLUE CEDAR'S NATURE OF THE ACTION AND ISSUES FOR TRIAL**

## I. Blue Cedar's Trial Brief omits discussion of negligence.

Other than obliquely referencing that it has asserted a negligence claim, Blue Cedar's Trial Brief makes no effort to press that claim. Indeed, the Trial Brief spends most of its body arguing simply that Blue Cedar does not have to prove negligence to prevail in this case. This strategy is telling—because Blue Cedar cannot carry its burden at trial to prevail on a negligence claim.

Specifically, there is no evidence that Mewbourne did anything to breach a duty of care owed to Blue Cedar. Blue Cedar raises no issues with the way Mewbourne completed the Edna 1H frac. Blue Cedar has identified no action which Mewbourne should have taken that it failed to take. Blue Cedar thus cannot prevail on a negligence claim here.

Moreover, Blue Cedar's negligence claim remains legally barred because Mewbourne owed Blue Cedar no duty with respect to the Mannering Wells. Initially, the Mannering Wells, each more than 6,600 feet away from the Edna 1H Well, are well outside any foreseeable zone of risk of harm for the Edna 1H Well. *See, e.g.*, *Marshall v. City of Tulsa*, 2024 OK 78, ¶ 23, 558 P.3d 1220, 1228. Additionally, even if the frac of the Edna 1H Well posed some minuscule risk to the Mannering Wells (the risk represented by the chance that the wells might connect via a worm hole, for instance), such a risk falls far short of the "unreasonably dangerous" risk required to form a duty. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 14, 160 P.3d 959, 964. Blue Cedar's negligence claim is therefore both factually and legally insufficient—and any recovery under it is barred.

## II. Blue Cedar's causation argument is propped up only by impermissible timing inferences.

Blue Cedar's Trial Brief likewise fails to bridge the gap between correlation and causation presented by its cause argument in this case. Blue Cedar's causation theory rests on nothing more than an inference that the Mannering Wells must have been harmed by the Edna 1H Well frac because the frac occurred at the same general time that the Mannering Wells experienced production declines.[3] Blue Cedar's case thus depends on an inference the Tenth Circuit has rejected: "reasoning from sequence to consequence." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521–22 & n.8 (10th Cir. 1987). Oklahoma law permits causation to be proven by circumstantial evidence only when the proof makes the claimed cause more probable than other causes; it does not allow a plaintiff to proceed on an inference supported by nothing more than timing. *Shell Oil Co. v. Haunchild*, 1950 OK 250, ¶ 16, 203 Okla. 456, 460, 223 P.2d 333, 337; *see also Lowry v. Iniguez*, No. CIV-20-06-SPS, 2021 WL 1234600, at *3 (E.D. Okla. Apr. 1, 2021). Because Blue Cedar offers only sequence, speculation, and inference piled on inference, its causation theory is legally insufficient.

## III. Blue Cedar cannot recover for nuisance.

### A. 50 O.S. § 16 bars nuisance liability in this case.

Blue Cedar's Trial Brief fails to address the critical legal hurdle it faces in making a nuisance claim. Under Oklahoma law, "[a]ny action conducted by critical infrastructure

---

[3] Pl.'s Tr. Br., Dkt. # 77, at 3.

sectors shall not constitute a nuisance when the applicable industry acts in compliance with or acts consistently with government rules, guidelines, laws and municipal ordinances or laws applicable to their sector." 50 O.S. §16. Blue Cedar does not dispute that oil and gas operations and production are part of a critical infrastructure sector, and it has made no allegation or produced any evidence that Mewbourne failed to act consistently with Oklahoma statutes, regulations, rules, and guidelines in fracing the Edna 1H. Accordingly, Blue Cedar's nuisance claim against Mewbourne is statutorily barred.

### B. Nuisance is not a strict-liability tort.

#### 1. *There is no special nuisance doctrine for subsurface fluid incursions— instead, Blue Cedar relies on an outdated, atextual interpretation of the Oklahoma Constitution.*

Blue Cedar asserts that Oklahoma has adopted a special, unique standard for nuisance liability in "cases involving the underground encroachment of water or oil into a plaintiff's property."[4] For this proposition, Blue Cedar cites several cases—the latest of which was decided in 1975. But none of these cases says anything of the sort. None identifies a special nuisance doctrine for cases regarding subsurface fluid incursions. Instead, each of these cases relies on article 2, section 23 of the Oklahoma Constitution, which provides that "[n]o private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner …."

Blue Cedar avoids more expressly referencing and relying on this constitutional interpretation because, in more recent cases, Oklahoma courts have interpreted section 23,

---

[4] Pl.'s Tr. Br., Dkt. # 77, at 5.

according to its plain text, as "merely limit[ing] the delegation of eminent domain power by the State to another individual or entity." *Malnar v. Whitfield*, 1989 OK CIV APP 28, ¶ 8, 774 P.2d 1075, 1078. In other words, section 23 is now properly recognized as an "eminent domain provision[]," which "provide[s] private property protection to Oklahoma citizens beyond that [provided by federal takings protections]." *Bd. of Cnty. Com'rs of Muskogee Cnty. v. Lowery*, 2006 OK 31, ¶¶ 19–20, 136 P.3d 639, 651–52; *see also In re Initiative Petition No. 382*, 2006 OK 45, ¶ 10, 142 P.3d 400, 406 (describing section 23 as a limit of eminent domain power); *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, ¶ 21 & n.7, 100 P.3d 678, 685 & n.7 (same).

Blue Cedar's only modern citation, meanwhile, is to an article written by Professor Joseph A. Schremmer. But Professor Schremmer does not use the sort of certain, absolute terms that Blue Cedar uses in describing liability for subsurface fluid intrusions. Instead, citing only the same outdated cases cited by Blue Cedar, Professor Schremmer makes the offhand statement that "a defendant ***may*** be liable for injury to a plaintiff's subsurface property as long as it was legally caused by an act of the defendant, ***apparently*** regardless of whether the act was volitional or its consequences reasonably foreseeable." Joseph A. Schremmer, *A Unifying Doctrine of Subsurface Property Rights*, 46 HARV. ENV'T L. REV. 525, 565 (2022) (emphasis added). But Professor Schremmer follows this offhand statement by saying that, ultimately, "the basis for liability for subsurface interference resembles the Restatement's version of nuisance. … Where a ***culpable*** act of the defendant legally causes the type of harm—interference with the plaintiff's fair opportunity to use—

liability should result." *Id.* at 566 (emphasis added). This is the same standard that modern Oklahoma courts have adopted for nuisance, as is illustrated below.

### 2. *Blue Cedar incorrectly states the modern standard for nuisance by relying on a single outlier case from the Oklahoma Court of Appeals.*

Blue Cedar argues in the alternative that the modern common law standard for nuisance in Oklahoma is also strict liability—where only unreasonable harm is required, rather than some culpable action of the alleged tortfeasor. For this astounding proposition, Blue Cedar cites one sentence from a single case: "The plaintiff need not show that the defendant's actions were unreasonable; rather, it need only be shown that the resulting burden on the plaintiff is unreasonable." *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, ¶ 20, 929 P.2d 288, 294 (citing RESTATEMENT (SECOND) OF TORTS § 822 comment b). But, in the sentence prior, the *N.C. Corff* court also noted that "[i]n order to maintain a cause of action for nuisance, the plaintiff must prove ***an unlawful act or omission of duty*** which either injured or endangered his use of his property." *Id.* (emphasis added) (citing *Thompson v. Andover Oil Co.*, 1984 OK CIV APP 51, ¶ 18, 691 P.2d 77, 83)). And the Restatement provision cited by the court in the sentence on which Blue Cedar relies makes clear that "an actor is no longer liable for accidental interferences with the use and enjoyment of land but ***only*** for such interferences as are ***intentional and unreasonable*** or result from ***negligent, reckless or abnormally dangerous conduct***." RESTATEMENT (SECOND) OF TORTS § 822 comment b (emphasis added).

Moreover, the Oklahoma Supreme Court and the Oklahoma Court of Appeals have stated expressly and repeatedly that there can only be nuisance liability when the defendant

takes an action that is "unreasonable, unwarranted, or unlawful." *Laubenstein v. Bode Tower, LLC*, 2016 OK 118, ¶ 10, 392 P.3d 706, 709; *Morain v. City of Norman*, 1993 OK 149, ¶ 14, 863 P.2d 1246, 1250; *Briscoe v. Harper Oil Co.*, 1985 OK 43, ¶ 9, 702 P.2d 33, 36; *Taylor v. Delaware Cnty. Solid Waste Tr. Auth.*, 2021 OK CIV APP 48, ¶ 11, 503 P.3d 1216, 1220. Federal courts interpreting Oklahoma law have also repeatedly stated this rule. *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1231 (10th Cir. 2001); *Sanders v. Grand River Dam Auth.*, 24-CV-258-MTS, 2024 WL 5701790, at *5 (N.D. Okla. Sept. 4, 2024); *Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1236 (E.D. Okla. 2021); *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, CIV-05-445-C, 2008 WL 11338389, at *3 (W.D. Okla. July 1, 2008).

This understanding is bolstered by the Oklahoma Uniform Jury Instructions approved by the Supreme Court in 2020. In the nuisance instruction, the very first requirement is that the defendant took "any unlawful action" or "failed to perform a duty." *In re: Amends. to the Okla. Unif. Jury Instructions – Civil*, 2020 OK 3; OUJI 33.2. Similarly, this Court has also determined this issue before—approving a jury instruction for nuisance containing the following element: "that [the] defendant['s] …hydraulic fracturing operation as to the [fraced well] constituted ***an unreasonable, unwarranted, or unlawful use*** of its property." *H & S Equip., Inc. v. Devon Energy Prod. Co., LP,* Case No. 15-cv-1244-HE (Doc. No. 82, Court's Instructions to the Jury, p. 14) (W.D. Okla. Aug. 15, 2017) (Given Jury Instructions, Judge Joe Heaton) (emphasis added).

And this state of the law makes sense—particularly in the context of ordinary oil-and-gas operations. Hydraulic fracturing and production are common, socially useful, and expected uses of mineral estates in Oklahoma. But a strict liability nuisance regime would transform these routine, highly beneficial operations into major liability generators for operators. In a strict liability system, every operator who fracs a well with all measure of reasonable care still takes the risk of litigation and liability if some distant well experiences a production decline during the frac. Operators are thus transformed into insurers against third-party production declines that cannot even be anticipated, much less controlled, through the operator's reasonable action in conducting the frac. Such a rule does nothing to impact an operator's care or reasonableness in fracing operations—because it will face liability regardless of its reasonableness—and instead merely discourages capital investment and chills development decisions on the front end of an industry that forms the backbone of Oklahoma's economy.

But the modern authorities on nuisance could not be clearer—nuisance is not a strict liability tort. It requires a showing that the defendant engaged in a culpable act in bringing about the plaintiff's alleged injury. Because Blue Cedar has no evidence that Mewbourne engaged in any culpable act, it cannot prevail on its nuisance claim.

## IV. Blue Cedar does not own the claims it brings here.

Blue Cedar's expert identified six potential stages of the Edna 1H Well frac that permanently damaged the Mannering Wells.[5] The latest of these stages occurred on

---

[5] Def.'s Mot. Sum. J. Ex. 12 ("Dick Report"), Dkt. # 46-12, at 5–6.

March 28, 2023.[6] Blue Cedar's expert identified pressure readings and production data, and specifically stated that the timing correlation here is "indisputable."[7] But Blue Cedar did not acquire the Mannering Wells until March 31, 2023—after the alleged injury occurred.[8] In its Trial Brief, Blue Cedar does not argue that its injuries occurred on or after March 31—instead it relies on two erroneous arguments. First, that the effective date of the acquisition retroactively shifted the owner of the claims brought in this lawsuit, and second, that temporary injuries do not accrue until they become permanent.

### A. A contractual effective date does not allow for the retroactive change of the real party in interest.

Blue Cedar contends that it is the real party in interest for all claims arising from the Mannering Wells after the effective date of its assignment from Citizen—February 1, 2023.[9] But an assignment that closed on March 31, 2023, could not have retroactively turned Blue Cedar into the real party in interest for torts that accrued before the closing date.

Under Oklahoma law, tort claims are not assignable, and property damage torts can thus only be brought by the party who owned the property at the time it was damaged. *Raw Crude Oil & Gas, LLC v. Ovintiv Mid-Continent Inc.*, No. CIV-21-305-J, 2021 WL 6328011, at *2 (W.D. Okla. Oct. 4, 2021); *Speedsportz, LLC v. Gooding & Co., Inc.*, 11-CV-0276-CVE-FHM, 2011 WL 5006456, at *4 (N.D. Okla. Oct. 20, 2011). To hold that

---

[6] *Id.*
[7] *Id.* at 4.
[8] Def.'s Mot. Sum. J. Ex. 17, Dkt. # 46-17, at 5–6.
[9] Pl.'s Tr. Br., Dkt. # 77, at 10–11.

parties can retroactively change the real party in interest for a tort by assigning the injured property would render property-damage torts freely assignable—one would simply need to convey the damaged property with an effective date before the injury. Ultimately, the effective date may allocate revenues and expenses between buyer and seller, but it could not retroactively transfer an already-accrued tort claim as against third parties. *See Waldock v. Frisco Lumber Co.*, 1918 OK 26, ¶ 12, 71 Okla. 200, 176 P. 218, 220 (distinguishing "intermediate rights" as opposed to rights of the parties); *see also Butterfield v. Tr. of Johnny B. McCoy Revocable Living Tr.*, 2024 OK CIV APP 2, ¶ 22, 542 P.3d 877, 881. Blue Cedar therefore only became the real party in interest for claims arising from the Mannering Wells as of March 31, and it cannot recover for the claims it now brings—each of which arose on March 28 or earlier.

**B. Property damage claims accrue as of the date of the injury.**

Blue Cedar also contends that, because Mewbourne asserts that Blue Cedar has suffered temporary damage, any claims did not accrue until that damage became permanent. As an initial matter, Blue Cedar is incorrect that Mewbourne asserts that Blue Cedar suffered a temporary injury—the filing Blue Cedar cites for that proposition is ***its own*** summary judgment response, not Mewbourne's. And Blue Cedar has been unequivocal—it claims to have suffered a "sudden and permanent" injury.[10] Blue Cedar cannot argue for temporary injury for purposes of accrual, but then argue for permanent

---

[10] Pl.'s Tr. Br., Dkt. # 77, at 1.

injury for all other purposes—including damages. If Blue Cedar wants to seek damages for permanent injury, it must accept that the accrual rules for permanent injury apply.

Moreover, the rule Blue Cedar cites for temporary injury accrual is for purposes of the statute of limitations, which is a different inquiry than accrual for purposes of determining who is the real party in interest for the claims. *See Calvert v. Swinford*, 2016 OK 100, ¶ 11, 382 P.3d 1028, 1033; *Reynolds v. Porter*, 1988 OK 88, ¶ 12, 760 P.2d 816, 821. In determining the real party in interest, the only question is who owned the property at the time the "sudden and permanent" injury occurred. *Speedsportz*, 2011 WL 5006456, at *4 (citing *Schoenfeld v. Blair*, 1961 OK 258, ¶¶ 5–8, 366 P.2d 414, 415).

## V. Blue Cedar is not entitled to a double recovery.

Blue Cedar seeks to recover more than the entire value of its allegedly damaged wells. But it is axiomatic in Oklahoma law that the damages for permanent injury to real property are limited to "the difference between the fair cash market value of the [property] immediately before the damage and immediately thereafter." *Greis v. Harjo*, 1939 OK 353, ¶ 11, 185 Okla. 474, 94 P.2d 539, 541; *see also Kerr-McGee Corp. v. Petchinsky*, 1968 OK 18, ¶ 4, 438 P.2d 475, 476; *Gulf Oil Corp. v. McCoy*, 1966 OK 107, ¶ 15, 416 P.2d 948, 951.

This remains the case, even where there have been attempted repairs—the "true measure of damages" is still capped at "the diminution in the land's value." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1027 (10th Cir. 2007); *see also Houck v. Hold Oil Corp.*, 1993 OK 167, ¶ 38, 867 P.2d 451, 461. The Restatement provides a similar

mechanism, noting that, in actions for harm to land from past invasions, damages are "the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case*, the cost of restoration that has been or may be reasonably incurred." RESTATEMENT (SECOND) OF TORTS § 929 (emphasis added). Accordingly, Blue Cedar's damages, if any, are limited to the difference in value for the Mannering Wells before and after the alleged injury occurred, and restoration or repair costs may only be sought as an alternative basis for damages, not an additional basis.

## CONCLUSION

Blue Cedar's Trial Brief reveals that Blue Cedar has no evidence that Mewbourne did anything wrong in fracing the Edna 1H Well. It also fails to deal with the legal bars against its claims in this case. Ultimately, Blue Cedar cannot recover on any of its claims and should be entitled to no relief in this case.

Respectfully submitted,

_____

Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
**MCAFEE & TAFT, P.C.**
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Tim.bomhoff@mcafeetaft.com
Laura.long@mcafeetaft.com

**AND**

Robert C. Vartabedian, OBA #33101
Weldon P. Sloan, WDOK #25-106
**Vartabedian Katz Hester & Haynes**
301 Commerce Street, Suite 2200
Fort Worth, TX 76102
Telephone: (817) 214-4979
Rob.vartabedian@vkhh.com
Weldon.sloan@vkhh.com

**ATTORNEYS FOR DEFENDANT,
MEWBOURNE OIL COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 22, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the electronic case filing system for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a notice of electronic filing to those registered participants of the ECF system.