# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Blue Cedar Energy, LLC, | § § § § | |
| *Plaintiff,* | § § § | |
| vs. | § § | Case No. 5:24-cv-00730-HE |
| Mewbourne Oil Company. | § § § § | |
| *Defendant.* | § § | |

### Mewbourne Oil Company's Motion to Certify Questions to the Oklahoma Supreme Court and Request for Expedited Briefing

COMES NOW Defendant Mewbourne Oil Company and files this Motion to Certify Questions to the Oklahoma Supreme Court and to Expedite Briefing ("Motion") and would respectfully show as follows:

## BACKGROUND

On May 5, the Court issued an Order granting in part and denying in part Mewbourne's Motion for Summary Judgment.[1] As a result, Blue Cedar's only live claim is for nuisance.

In its Motion for Summary Judgment, Mewbourne raised two arguments on Blue Cedar's nuisance claim. ***First***, the 2021 amendments to 50 O.S. § 16 create an absolute defense to nuisance liability when (a) the alleged nuisance is an act "conducted by critical infrastructure sectors," and (b) the defendant acts in compliance with or acts consistently

---

[1] Dkt. # 89.

with government rules, guidelines, laws and municipal ordinances or laws applicable to their sector.[2] **Second**, current Oklahoma jurisprudence requires a finding of an unreasonable, unwarranted, or unlawful use of property to establish nuisance liability,[3] and does not interpret Article 2, section 23 of the Oklahoma Constitution as imposing a strict-liability regime on nuisance claims.[4]

The Court's Order included several legal and factual findings relevant to Blue Cedar's nuisance claim. The Court noted, for instance, how it is undisputed that "Mewbourne complied with all applicable statutes and regulations in completing the Edna 1H well. The Oklahoma Corporation Commission approved the well's location, the formation from which it produced, and its final drilling, completion, and production."[5] If Mewbourne's arguments about 50 O.S. § 16 and the current state of nuisance law in Oklahoma were correct, then Blue Cedar's nuisance claim fails.

But the Court held that, based on the Tenth Circuit's analysis of a 1939 Oklahoma Supreme Court opinion that has not been expressly overruled, the "Private Takings Clause" in the Oklahoma Constitution modified the common law for nuisance claims such that a nuisance plaintiff need not prove unlawful, unreasonable, or unwarranted conduct.[6] The

---

[2]   Dkt. # 46, at 22–23.

[3]   Dkt. # 46, at 23–26.

[4]   Dkt. # 60, at 7–10.

[5]   Dkt. # 89, at 5.

[6]   Dkt. # 89, at 10–11.

Court also held that 50 O.S. § 16 does not bar Blue Cedar's nuisance claim because that statute (a) may not have explicitly barred common-law nuisance claims and (b) was a "suspect … attempt to modify the [nuisance] standard by statute" because of the "constitutional underpinnings" of Oklahoma's nuisance standard.[7] As a result, the Court left Blue Cedar's nuisance claim intact and ordered the case to proceed to trial on the "modified private nuisance claim."[8] But the Court's reasoning behind its Order involved multiple issues that have never been addressed by the Oklahoma Supreme Court: the propriety of the Legislature's expressed intent to curb nuisance liability for critical infrastructure sectors and the modern interpretation of the Oklahoma Constitution's Private Takings Clause. Because those are issues of first impression in Oklahoma law, and because resolving them may determine the fate of Blue Cedar's last claim, Mewbourne asks the Court to consider certifying two questions to the Oklahoma Supreme Court.

**MOTION TO CERTIFY QUESTIONS TO THE OKLAHOMA SUPREME COURT**

The decision to certify a question of law lies within the Court's discretion. *See, e.g.*, *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006); *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 775 (10th Cir. 1999); *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990). Courts in this Circuit exercise that discretion "in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v.*

---

[7]   Dkt. # 89, at 12.

[8]   Dkt. # 89, at 14.

*United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). The Oklahoma Supreme Court has the power to accept a certified question "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state." 20 O.S. § 1602.

**I.      This case presents novel issues of first impression under Oklahoma law for which there is no controlling decision of the Oklahoma Supreme Court.**

**A. There are *zero* cases interpreting or applying the 2021 amendments to 50 O.S. § 16.**

When the Oklahoma Legislature amended 50 O.S. § 16, in 2021 through SB939,[9] the law in Oklahoma became that "[a]ny action conducted by critical infrastructure sectors shall not constitute a nuisance when the applicable industry acts in compliance with or acts consistently with government rules, guidelines, laws and municipal ordinances or laws applicable to their sector." 50 O.S. § 16. The energy sector is one such critical infrastructure sector, and hydraulic fracturing operations are subject to various Oklahoma statutes and regulations. The natural conclusion is that such operations, when performed in compliance with such statutes and regulations, cannot constitute a nuisance as a matter of law.

This issue has importance well beyond the parties because it goes to how Oklahoma will treat liability for conduct the State has chosen to permit, regulate, and affirmatively protect as part of its critical infrastructure. The Legislature did not label the energy sector "critical infrastructure" in the abstract. It did so against the backdrop of a comprehensive

---

[9]   Dkt. # 60-1.

regulatory regime that places oil and gas development under continuous oversight, including permitting, spacing, location approval, and operational requirements administered by the Oklahoma Corporation Commission. If nuisance liability may be imposed for regulated operations based on damage alone, without any showing that the operator acted unlawfully, unreasonably, or negligently, then nuisance becomes an open-ended strict-liability theory that functions as a second regulatory layer imposed through litigation. That shift would not be limited to oil and gas, but the consequences would be most immediate there because the State's economy and governance assume lawful energy development will proceed under Oklahoma's regulatory rules rather than be chilled by unpredictable after-the-fact liability that treats compliance as irrelevant. In practical terms, converting nuisance into strict liability for fully regulated activity would destabilize the reliance interests built into Oklahoma's statutory scheme, expand exposure across similarly regulated industries, and invite inconsistent outcomes in the very area where Oklahoma has made a clear policy judgment to regulate and protect critical infrastructure.

But the Court declined to apply 50 O.S. § 16 to Blue Cedar's nuisance claim. In so holding, the Court expressed doubt that 50 O.S. § 16 sufficiently modified Oklahoma common law on nuisance,[10] highlighting the requirement from 12 O.S. § 2 that "the common law remains in full force unless a statute explicitly provides to the contrary," and

---

[10]   Dkt. # 89, at 12.

that such modification may not be "effected by mere implication."[11] The Court added that the application of nuisance law in Oklahoma "has constitutional underpinnings, rendering suspect" the Legislature's attempt to make compliance with rules and regulations an absolute bar to nuisance claims.[12]

The Court's Order and analysis raise several issues that warrant certifying a question to the Oklahoma Supreme Court. ***First***, the Court's Order may have been driven by the fact that there are exactly *zero* cases—in Oklahoma state court or any federal court—interpreting the new 50 O.S. § 16 and its applicability to nuisance claims arising out of oil and gas operations.[13] ***Second***, there is no authority—from any court—examining whether 50 O.S. § 16 satisfies—or even whether it was *required to satisfy*—the requirements for modifying Oklahoma common law under 12 O.S. § 2. ***Third***, there is no authority—from any court—examining the constitutionality of the Legislature's 2021 attempt to curb nuisance liability for oil and gas operators through 50 O.S. § 16. The dearth of Oklahoma case law of any kind interpreting 50 O.S. § 16, whether it satisfies 12 O.S. § 2, and whether the 2021 amendments to 50 O.S. § 16 are valid under the Oklahoma Constitution are all issues of first impression under Oklahoma law. These novel issues warrant a certified

---

[11]   Dkt. # 89, at 12 (citing 12 O.S. § 2; *Nichols v. Mid-Continent Pipe Line Co.*, 1996 OK 118, ¶ 8 n.8, 933 P.2d 272, 276).

[12]   Dkt. # 89, at 12.

[13]   There is exactly *one* case even citing the 50 O.S. § 16 since 2022: *Vulcan Constr. Materials, LLC v. City of Tishomingo*, 2023 OK CIV APP 5, ¶ 13, 526 P.3d 1171, 1175. That case dealt only with the unmodified portion of 50 O.S. § 16. *Id.*

question to the Oklahoma Supreme Court. *See* 20 O.S. § 1602. Mewbourne therefore asks

the Court to certify the following question to the Oklahoma Supreme Court:

> Are oil and gas operations—when conducted in compliance or consistent with government rules, guidelines, laws and municipal ordinances or laws applicable to the energy sector—statutorily barred from constituting a nuisance under Oklahoma law?

**B. There is no Oklahoma Supreme Court case addressing the clear shift in interpreting the Oklahoma Constitution's "Private Takings Clause."**

As the Court noted, the Tenth Circuit in *Greyhound Leasing & Financial Corp. v.*

*Joiner City Unit*, 444 F.2d 439 (10th Cir. 1971), reasoned that the Oklahoma Constitution's

Private Takings Clause—Article 2, section 23—imposes a strict liability standard for

nuisance claims.[14] The Tenth Circuit based that decision on a 1962 Oklahoma Supreme

Court decision interpreting a 1939 Oklahoma Supreme Court decision interpreting the

Private Takings Clause. *Id.* at 441–43.

But Oklahoma courts have more recently held that the Private Takings Clause

"merely limits the delegation of eminent domain power by the State to another individual

or entity." *Malnar v. Whitfield*, 1989 OK CIV APP 28, ¶ 8, 774 P.2d 1075, 1078; *see also*

*Hall v. Galmor*, 2018 OK 59, ¶¶ 56–60, 427 P.3d 1052, 1075–76, as corrected (July 16,

2018) (emphasizing the takings nature of Section 23); *Bd. of Cnty. Com'rs of Muskogee*

*Cnty. v. Lowery*, 2006 OK 31, ¶¶ 19–20, 136 P.3d 639, 651–52 (same). Moreover, modern

Oklahoma cases have held—without variation—that nuisance arises from "unreasonable,

---

[14]   Dkt. # 89, at 10–11.

unwarranted, or unlawful" conduct. *See, e.g.*, *Nichols*, 1996 OK 118, ¶ 11, 933 P.2d at 277;

*Laubenstein v. Bode Tower, LLC*, 2016 OK 118, ¶ 10, 392 P.3d 706, 709 (citation omitted);

*State ex rel. Hunter v. Johnson & Johnson*, 2021 OK 54, ¶ 19, 499 P.3d 719, 725.

There has been a clear shift in how Oklahoma courts interpret the Private Takings Clause and the consistency with which Oklahoma courts require some showing of wrongdoing to establish nuisance. Even so, the Oklahoma Supreme Court has not had the opportunity to clarify that the Private Takings Clause merely limits the delegation of eminent domain power by the State rather than applies a strict liability regime to *all* claims for damages to private property. Such a novel issue warrants a certified question to the Oklahoma Supreme Court. *See* 20 O.S. § 1602. Mewbourne therefore asks the Court to certify the following question to the Oklahoma Supreme Court:

> Does the Oklahoma Constitution's "Private Takings Clause" (Article 2, section 23) merely limit the delegation of eminent domain power by the State rather than apply a strict liability regime to *all* claims for damages to private property, including those related to lawful oil and gas operations?

## II.   Resolving these questions may decide the fate of Blue Cedar's only live claim.

Answering "yes" to either proposed certified question will completely resolve this case. The Court's summary-judgment Order resolved Blue Cedar's negligence claim in Mewbourne's favor.[15] Blue Cedar has withdrawn its punitive damages claim.[16] So the only

---

[15]   Dkt. # 89, at 9.

[16]   Dkt. # 89, at 13.

remaining claim is Blue Cedar's private nuisance claim.[17] All necessary factual findings have also been either admitted or made by the Court. As noted in Mewbourne's Motion for Summary Judgment, Blue Cedar does not dispute that oil and gas operations and production are part of a critical infrastructure sector, and it has made no allegation or produced any evidence that Mewbourne failed to act consistently with Oklahoma statutes, regulations, rules, and guidelines in fracing the Edna 1H.[18] And the Court noted how it is undisputed that "Mewbourne complied with all applicable statutes and regulations in completing the Edna 1H well. The Oklahoma Corporation Commission approved the well's location, the formation from which it produced, and its final drilling, completion, and production."[19]

It has therefore been conclusively determined that Mewbourne complied with all applicable rules and regulations. So a decision from the Oklahoma Supreme Court *either* that the Oklahoma Constitution does not mandate a strict liability standard for nuisance claims *or* compliance with applicable rules and regulations in oil and gas operations acts as a statutory bar to nuisance claims completely forecloses Blue Cedar's nuisance claim. Such an answer will resolve this case *in toto*.

---

[17]  Dkt. # 89, at 14.

[18]  Dkt. # 46, at 23.

[19]  Dkt. # 89, at 5.

## CONDITIONAL MOTION TO STAY TRIAL COURT PROCEEDINGS

If the Court grants Mewbourne's Motion to Certify Questions, Mewbourne also asks the Court to stay all proceedings in this case until the Oklahoma Supreme Court either answers or declines to answer the proposed certified questions.

A stay makes sense here and is within the Court's discretion to grant. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). If the Court certifies questions to the Oklahoma Supreme Court, and if the Oklahoma Supreme Court agrees to answer those questions and answers either question with a "yes," then Blue Cedar takes nothing under its nuisance claim. Neither party would be served by conducting a trial on Blue Cedar's nuisance claim when the state of the law surrounding that claim is uncertain and may be resolved through certified questions to the Oklahoma Supreme Court. A stay would also conserve the Court's resources and support judicial economy.

Mewbourne therefore asks that, if the Court grants the Motion to Certify Questions, the Court also stays all proceedings in this case until the Oklahoma Supreme Court either answers or declines to answer the proposed certified questions.

## REQUEST FOR EXPEDITED BRIEFING

The Court set this case for a May 12 pretrial conference and a May 18 jury selection. If the Court is going to rule on the issues presented in this Motion—including the conditional request to stay trial-court proceedings—before seating a jury, an expedited briefing schedule is necessary. To that end, Mewbourne asks the Court to order a response

from Blue Cedar (if any) by **May 14, 2026**. To facilitate disposition of this Motion before jury selection, Mewbourne will waive its right to file a reply brief if an expedited briefing schedule is granted.

## CONCLUSION

For these reasons, Mewbourne respectfully requests that the Court present the following certified questions to the Oklahoma Supreme Court:

> Are oil and gas operations—when conducted in compliance or consistent with government rules, guidelines, laws and municipal ordinances or laws applicable to the energy sector—statutorily barred from constituting a nuisance under Oklahoma law?
>
> and
>
> Does the Oklahoma Constitution's "Private Takings Clause" (Art. II, § 23) merely limit the delegation of eminent domain power by the State rather than apply a strict liability regime to *all* claims for damages to private property, including those related to lawful oil and gas operations?

Conditioned upon the Court granting Mewbourne's Motion to Certify Questions, Mewbourne asks the Court to stay all proceedings in this case until the Oklahoma Supreme Court either answers or declines to answer the proposed certified questions.

Mewbourne also asks that, given the anticipated start date of trial, the Court order Blue Cedar to respond to this Motion no later than Thursday, May 14 so the Court can have time to consider the Motion and, if necessary, stay proceedings before jury selection on Monday, May 18.

Mewbourne also asks for all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Robert C. Vartabedian*
Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
**MCAFEE & TAFT, P.C.**
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Tim.bomhoff@mcafeetaft.com
Laura.long@mcafeetaft.com

**AND**

Robert C. Vartabedian, OBA #33101
Daniella P. Main, WDOK # 25-148
Weldon P. Sloan, WDOK #25-106
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, TX 76102
Telephone: (817) 214-4979
Rob.vartabedian@vkhh.com
Daniella.main@vkhh.com
Weldon.sloan@vkhh.com

**ATTORNEYS FOR DEFENDANT,
MEWBOURNE OIL COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 8, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the electronic case filing system for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a notice of electronic filing to those registered participants of the ECF system.

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian